Jose ZAYAS RODRIGUEZ, et al., Plaintiffs,

v.

Dario HERNANDEZ, et al., Defendants.

Civ. No. 85–0734 (JAF).

United States District Court, D. Puerto Rico.

Sept. 27, 1990.

Eliezer Aldarondo, Miguel Pagán, Aldarondo & Lopez–Bras, San Juan, P.R., for plaintiffs.

Isabel J. Vélez Serrano, Ramirez & Ramirez, Héctor Rivera Cruz, Secretary of Justice, Dept. of Justice, Com. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

### I.

#### Introduction

We are once again faced with a case of alleged political discrimination in public sector employment following Puerto Rico's 1984 general elections. In the case before us the plaintiffs are one present and one past employee of the Puerto Rico Highway Authority.[1] Both profess to being members of the Partido Nuevo Progresista ("PNP"), one of Puerto Rico's two largest political parties. In the election of November 6, 1984, the PNP incumbent Governor, Carlos Romero Barceló, was defeated by Rafael Hernández Colón, the candidate of the Partido Popular Democrático ("PPD"). Defendants are high level Highway Authority appointees, all members of Hernández Colón's victorious PPD party. Plaintiffs allege that defendants subjected them to changes in employment which were adverse to plaintiffs, and that such actions were taken because of the plaintiffs' political beliefs and associations in violation of their first amendment rights. In addition, plaintiffs aver that the adverse employment actions complained of were executed without due process of law in violation of their fifth and fourteenth amendment rights.[2] Plaintiffs plead for injunctive and declaratory relief as well as damages, basing their claims on the above constitutional violations separately and as a predicate to a damage award under 42 U.S.C. section 1983.

Before the court is defendants' motion for summary judgment on both the first amendment and due process claims, along with defendants' motion, in the alternative, for the court to reconsider a prior decision in which this court had refused to grant defendants limited immunity as to these plaintiffs' claims. The primary thrust of defendants' current motion is that the job actions taken by defendants, and "against" the plaintiffs, were not sufficiently severe

---

1. The Puerto Rico Highway Authority was created pursuant to Act No. 74 of June 23, 1965, 9 L.P.R.A. §§ 2001 et seq. It is not disputed that defendants, in performing their duties in directing and supervising the Highway Authority, operated under color of law, triggering "state action" for the purposes of constitutional analysis.

2. The Supreme Court has held that one or another or both of the Constitution's two due process clauses (in the fifth and fourteenth amendments) apply to Puerto Rico, although it is not a "state". Calero–Toledo v. Pearson Yacht Leasing

Co., 416 U.S. 663, 668–69, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974); Tenoco Oil Co. v. Dept. of Consumer Affairs, 876 F.2d 1013 (1st Cir. 1989). For purposes of the discussion in this case, it does not matter from which source the claimed due process rights flow, and we will refer generally to "due process" rather than make repeated references to the two relevant amendments. A history of Puerto Rico's unique status in the federal system is available in J.R. Torruella, The Supreme Court and Puerto Rico: The Doctrine of Separate and Unequal (1985).

to rise to the level of a constitutional deprivation under the first amendment standard for political discrimination as set out by the First Circuit in *Agosto-de-Feliciano v. Aponte-Roque*, 889 F.2d 1209 (1st Cir. 1989), and recently reviewed by the Supreme Court in *Rutan v. Republican Party of Illinois*, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). We agree with defendants that no genuine and material issues exist regarding the level of harm inflicted on plaintiffs, and we *grant* summary judgment to the defendants for the reasons stated below. We also agree that plaintiffs have not generated a substantial and material factual issue with respect to their claims of due process violations and, accordingly, defendants' motion for summary judgment as to the due process claims is also *granted.*

## II.

### Procedural History

The original plaintiffs (following service of an amended complaint) were eleven employees of the Puerto Rico Highway Authority and their respective spouses. Defendants were Darío Hernández, the Secretary of the Department of Transportation and Public Works of Puerto Rico, Antonio E. Medina, the Executive Director of the Puerto Rico Highway Authority, Francisco Morales Acobes, the Acting Director of the Personnel Office of the Puerto Rico Highway Authority, and the Puerto Rico Highway Authority itself. The individuals were sued in both their individual and official capacities.

By order of this court dated August 21, 1986, the actions of the spouses were dismissed, and the Puerto Rico Highway Authority's motion for summary judgment as to it was granted. Those decisions are not at issue here.

### A. Effect of Interlocutory Appeal

In addition to the dismissals, we held on August 21, 1986 that the defendants were not entitled to summary judgment granting them qualified immunity for their actions with respect to the eight higher level "trust" or "confidence" employees.[3] Defendants sought the protection of qualified immunity under the doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), on the basis that the actions taken by them with respect to plaintiffs, even if found to be constitutional violations, were not so clearly established as such at the time they were taken as to render the defendants individually liable for money damages.

Defendants appealed the denial of qualified immunity. The Court of Appeals, in *Zayas–Rodríguez v. Hernández*, 830 F.2d 1 (1st Cir.1987), reversed us as to the claims of the eight plaintiff employees who had been in the higher level "trust" or "confidence" positions prior to the complained of acts.[4] The First Circuit held that the eight trust employees held jobs that "potentially" involved matters of political concern, and that the defendants were therefore entitled to qualified immunity. *Zayas–Rodríguez v. Hernández*, 830 F.2d 1 (1st Cir.1987). The eight trust employees were eventually dropped from the case entirely by stipulation. (See order dated November 6, 1987.)

This left only the claims of the three lower level "career" employees, Gladys Bonilla Laurraury, Wilfredo Jirau Toledo, and Edgardo Pou Estape. On July 2, 1990, we dismissed Pou Estape's claim.

We proceed, therefore, to determine the defendants' current summary judgment motions as they relate to the two remaining

**3.** Puerto Rico's Civil Service system divides jobs into two general categories, "confidential" or "trust" positions and "career" or "regular" positions. The former are the relatively few positions within the civil service ranks which involve "formulation of public policy," 3 L.P.R.A. §§ 1349 *et seq.* (1980 & Supp.1988). The latter constitute the majority of non-policymaking employees. *See Juarbe-Angueira v. Arias*, 831 F.2d

11 (1st Cir.1987); *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988).

**4.** The plaintiffs who were granted qualified immunity by the Court of Appeals were Ramírez Vélez, Enriquez Aponte, Ramos Cruz, Ferrer Aponte, Zayas–Rodríguez, Nieves Maldonado, Vega Pérez and Nazario Miranda. *Zayas–Rodríquez,* 830 F.2d at 2–3.

plaintiffs, Gladys Bonilla Larraury and Wilfredo Jirau Toledo.

## III.

### Standard of Review

■ In order to defeat a motion for summary judgment, the non-moving party must demonstrate the existence of an issue of genuine material fact pertaining to those factual issues on which it would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir.1988); *Moody v. Maine Central Railroad Co.*, 823 F.2d 693, 694 (1st Cir.1987). "[T]he existence of some alleged factual dispute will not defeat a summary judgment motion; 'the requirement is that there be no *genuine* issue of *material* fact.'" *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 804 (1st Cir.1987), *quoting Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Therefore, if plaintiffs, as the non-moving parties with the burden of proof at trial, fail after adequate discovery to demonstrate factual support for any essential element of their claim, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. We note that since the burden of proof as to the severity of the change in conditions for political discrimination cases has been set by the First Circuit as "clear and convincing" evidence, *Agosto*, 889 F.2d at 1220, we must be guided by that higher proof burden standard in determining whether a factual dispute requiring trial exists. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. For the summary judgment motion to be defeated, we would have to find that plaintiffs have produced sufficient facts as to all material elements, including severity in change of job circumstances, so that a rea-

sonable trier of fact could find for them by "clear and convincing" evidence. *Id.*

## IV.

### Facts

#### A. Plaintiff Bonilla

Plaintiff Bonilla occupied a "career" position as an Administrative Secretary in the Puerto Rico Highway Authority beginning in 1982. By the time of the elections in November of 1984, her official title was "Secretary IV". Her duties, according to her own description in an employee "Classification Questionnaire", included taking dictation, typing, taking minutes of meetings, taking sworn statements, preparing contracts for signature, answering the telephone, and other related tasks.[5]

Bonilla was, prior to the events complained of here, under the direct supervision of attorney Héctor Cordero Vázquez. Cordero advised the Executive Director on legal matters. Cordero and Bonilla were located in the Executive Director's area. After the election, Cordero was reassigned to the Legal Advisor's area. Bonilla sought to follow her old boss, and initially was granted permission to do so. Upon her arrival at the Legal Advisor's office, however, Bonilla was reassigned to the "construction" area. Bonilla complained to the personnel office about her reassignment, and by mid-March of 1985, she was returned to the Legal Advisor's Office in response to her complaint. At no time did Bonilla's salary suffer nor was her civil service "rank" of Secretary IV reduced.

Plaintiff Bonilla does allege in the complaint and in a later affidavit that she "was sent to the construction area without any assignment, duties or supervision." This bare allegation, however, is nowhere supported factually in the record, and plaintiff fails to highlight it in her opposition to the present motion as a potentially material factual dispute. Since this allegation remains as a bare, unsupported pleading, we

---

5. The use of the employee description forms to determine the nature of the job being examined has been specifically approved by the Court of Appeals in the context of the other political discrimination suits brought following the 1984 Puerto Rico elections. *Rodríguez–Burgos v. Electric Energy Authority*, 853 F.2d 31 (1st Cir. 1988); *Méndez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1260 (1st Cir.1987).

do not believe that plaintiff has succeeded in generating a genuine factual dispute with regard to her day-to-day duties during the hiatus to the construction area.[6] She has not produced "any significant probative evidence tending to support the complaint" with respect to this allegation. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, *reh. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

We accept the following as undisputed facts: Plaintiff's transfer against her will in January of 1985, her retention of rank and salary, her restoration to the legal department in March of 1985, and that she suffered some degree of loss of job satisfaction associated with her loss of a close working relationship with the legal advisor to the director. We do not believe that any other material facts have been put into genuine dispute.

### B. Plaintiff Jirau

At the time of the 1984 election, Jirau was the Deputy Director of the Expressway Administration Office. The position carried a "rank" of 26 and was listed as a "career" position. Jirau had an automobile at his disposal. A 1983 personnel questionnaire filled out by Jirau reveals that almost 90% of the time in the position was dedicated to the following tasks:

Coordinate all the activities of the staff which includes the planning, programming, supervision of the administration (budget, property, services and personnel matters) operation, conservation and decoration of roads. I advise the Director of the Office regarding any matter related to highways.

Docket Document No. 74, Exhibit F.

After the election, Jirau was shifted to a position as "Engineer VI", a position which carried the same rank and the same salary as his previous job. The employee job description submitted by Jirau for the Engineer VI position shows the following tasks:

I direct all the technical and administrative activities of the Engineering and Conservation Office. this [sic] includes the planning and [su]pervision [sic] of three Conservation and Decoration districts, a Traffic Signal shop and a Radio Communication Shop. [45% of the time] I prepare the annual budget of the Office. This includes the consolidation of the items for equipment, tools, materials, presented in the work plan of the three districts the two shops. I assign cost and determine the total amount of the budget. [10% of the time] I evaluate pursuant to the budget all the purchase requisitions of the districts and shops. I consolidate them and prepare the technical specifications required. Subsequently as a requirement from the Purchasing and Contracts Office I evaluate the estimates and proposals to recommend to purchase according to our requirement. [10% of the time]

The description notes that the number of persons supervised (directly or through immediate subordinates) exceeds 260. Jirau retained access to his government automobile. He remained working in the same physical location.

The individual who replaced Jirau in the position of Deputy Director of the Administration Office was Victor M. Ferrer. Ferrer, who shares the same political affiliation as Jirau (PNP), was one of the original eight "trust" or "confidence" plaintiffs in this case. Ferrer had at one time occupied the Deputy Director position, (career) and had been promoted to the Director's position (trust). After the PPD victory, Ferrer was removed from the trust position, and reinstated to the Deputy spot he had occupied before Jirau.

## V.

### *First Amendment*

It has been well-settled for more than a decade that government employees

---

**6.** Defendants are under no obligation to produce affirmative evidence *negating* plaintiff's allegations as to these facts. It is enough for the court, for purposes of a defendant's summary judgment motion, to find plaintiff's own factual basis for the allegation to be insufficiently probative to put the particular facts at issue. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

are protected from discharge from their positions on the basis of their beliefs or political affiliations, *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). An exception has been recognized in cases where the employee is in a policymaking position for which party affiliation and loyalty may be required to effectuate an efficient implementation of governmental policy in response to voter preferences. *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. In such cases, the vital government interest in seeing the implementation of the policies of a new administration may weigh more heavily than the individual speech rights which might be implicated. *Elrod,* 427 U.S. at 362–63, 96 S.Ct. at 2684–85.

Employees may be legally subjected to politically-motivated job actions due to their own actual policymaking functions, *Rodríguez–Burgos v. Electric Energy Authority,* 853 F.2d 31 (1st Cir.1988); *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 239 (1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), or due to their "unusually intimate propinquity relative to government leaders." *Santiago–Correa v. Hernández–Colón,* 835 F.2d 395 (1st Cir.1987); *Vázquez Ríos v. Hernández Colón,* 819 F.2d 319, 324 (1st Cir.1987). The first step in the analysis, then, is to determine whether the requirement of a particular political affiliation is appropriate to the job in question. More specifically, we must decide if that issue can be disposed of on summary judgment. (Since defendants make no claim that political affiliation was appropriate for Jirau's position, this step of the analysis must be performed for Bonilla only.)

### A. Appropriateness of Political Affiliation as a Requirement for Bonilla's Position

Defendants argue in footnote 13 of their memorandum in support of their summary judgment motion that plaintiff Bonilla's position as a legal secretary for the advisor to the Executive Director gave her access to sensitive policymaking information which would render her party loyalty a necessary element of her position. In support of their assertion, defendants cite this court's opinion in *Angeles Castrello Merced v. Rafael Hernández–Colón,* 740 F.Supp. 108 (D.P.R.1990). In *Castrello,* we held that two secretaries who from time to time had filled the role of personal secretary to the Governor of Puerto Rico were in a position of confidence such that party affiliation was an appropriate requirement. We do not agree that *Castrello* controls here. The Governor of Puerto Rico's entire function is to formulate policy at, quite literally, the highest level. His notes, correspondence, memorandum, or other matters to which a personal secretary would likely be privy are *per se* the work product of policy implementation.[7]

The same cannot be said of the position which plaintiff Bonilla held. The legal advisor to the Highway Authority Director is not the Governor. While it might be the case that the documents or discussions to which Bonilla was exposed were of a politically sensitive nature, the record is by no means clear enough on that issue for us to resolve it as a matter of summary judgment. Instead, we move on to the second question in our inquiry: Assuming that these are both "protected" positions, were the job actions taken sufficiently harmful to plaintiffs to trigger a first amendment violation?

### B. Nature of the Adverse Job Actions

Defendants urge that under the First Circuit's opinion in *Agosto-de-Feliciano v. Aponte–Roque,* 889 F.2d 1209 (1st Cir. 1989), we are bound to find that even assuming the actions complained of were taken, whatever harm was suffered does not rise to the level of a constitutional violation. Defendants assert that the Supreme

---

**7.** Not all employees working in the physical vicinity of high government officials are vulnerable to partisan dismissal. The First Circuit has distinguished between those employees whose exposure to sensitive material is "incidental" to their jobs, like waiters and cleaning personnel, and those whose function intrinsically places them in contact with confidential information. *Vázquez Ríos v. Hernández Colón,* 819 F.2d 319 (1st Cir.1987).

Court's recent holding in *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), does not command a different result than would be reached under *Agosto.* For the purposes of this case, we agree.

In *Agosto, supra,* the First Circuit undertook to set out standards to evaluate what type of employer action short of dismissal would support a claim for violation of the plaintiffs' right of association. The *Agosto* court determined that any claim would need to pass a certain "severity of harm" threshold before the law would recognize a "constitutionally significant burden" capable of giving rise to relief. *Agosto,* 889 F.2d at 1216. The court, in defining its task, sought to develop a standard which would find a cognizable legal wrong only "when the government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." *Id.* at 1217. The court specifically recognized that under its standard "some politically motivated interactions between high-level policymakers and protected civil service employees" would not "trigger a constitutional cause of action." *Agosto,* 889 F.2d at 1217.

The *Agosto* court then sets out examples of hypothetical employment actions which would render an affected employee's new status as "unreasonably inferior," and therefore actionable. The hypotheticals make clear that a whole spectrum of actions well short of dismissal may indeed trigger constitutional protection. They also indicate that some contraction of responsibility or limitation on the number or quality of perquisites must be tolerated without federal liability attaching. We believe that this standard, at least as we must apply it to the facts at hand, is consistent with the Supreme Court's own recent review of this doctrine in *Rutan, supra.* In *Rutan* the Supreme Court was asked to review the Seventh Circuit's standard with respect to politically motivated job actions. The Seventh Circuit had adopted a rigid

requirement that plaintiffs prove actual dismissal or the "substantial equivalent of a dismissal" which the circuit defined as an action that would lead a reasonable person to resign. *Rutan,* 110 S.Ct. at 2733 (citing the Seventh Circuit's decision at 868 F.2d 943, 955 (1989)). The *Rutan* Court rejected such an inflexible approach. It extended the doctrine of *Elrod* and *Branti* to "deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." *Rutan,* 110 S.Ct. at 2737.[8]

The First Circuit in *Agosto* made the same rejection of the Seventh Circuit's "substantial equivalent of dismissal" test as the Supreme Court. We are mindful of the fact that in *Rutan* the Court faced the issue on motions to dismiss for failure to state a cause of action, whereas the *Agosto* court was formulating standards for the factfinder to apply. While both *Rutan* and *Agosto* open the courthouse door to plaintiffs who claim deprivation short of dismissal, *Agosto* assists in sifting through the evidence once inside. We think that the threshold test for severity of harm, in so far as it is interpreted to prevent the government from causing "reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party," *Agosto* at 1217, parallels the Supreme Court's edict that the government cannot through politically motivated job actions "pressur[e] employees to discontinue their free exercise of their First Amendment rights." *Rutan,* 110 S.Ct. at 2739.

We note that in light of *Rutan,* a district court examining the factual basis of an alleged violation should not read "reasonably hardy" to mean "unusually robust." Nevertheless, we believe that we are bound by the First Circuit's stated desire to discourage federal litigation over every jostle and bruise that can be the expected result of an active multi-party system. We now

---

**8.** The individuals in *Rutan* alleged deprivations such as repeated denial of promotion, refusal to transfer to a location near the individual's home, failure to recall after layoff and failure to hire. *Rutan,* 110 S.Ct. at 2732.

evaluate each plaintiff's case with these standards in mind.

### 1. Bonilla's Change in Position

■ Plaintiff Bonilla's complaint revolves exclusively around her transfer from work with the Legal Advisor to the construction area of the Highway Authority in the early months of 1985. It is conceded that her rank was undisturbed and that she suffered no change of salary as a result of the action. Upon her complaint to the personnel department, she was returned to work in the legal area. (*See* Facts, *supra*.) Even if we take as true that in the shuffle following the change in administration Bonilla was shifted from her preferred post with legal, and upon her complaint was then restored, this is not sufficient to meet the severity of harm standard as set out in *Agosto, supra*. *See Celotex*, 477 U.S. at 322–25, 106 S.Ct. at 2552–54.

Plaintiff's case is not saved by the reasonable inference which may be drawn from the facts as presented that her old job as secretary to attorney Cordero was a "prime" spot for a secretary at her level, and that her removal from that position reduced her to "just another" Secretary IV in the office. In conducting the inquiry, it is the position itself that must be examined, not the special "perks" that might have attached themselves to the person in the position. *Agosto*, 889 F.2d at 1219 (example 1). While we are persuaded that Bonilla's overall job satisfaction was not the same after January of 1985 as it was prior to that date, none of the facts as presented to this court tend to establish that Bonilla was not treated in accordance with her rank as a Secretary IV. The policymakers who were installed into decision making positions at the Highway Authority after the 1984 elections were under no constitutional stricture to recreate for Bonilla the same advantageous working relationship that she had enjoyed under attorney Cordero when he had occupied a position close to the then agency head.

We believe that it is significant that upon Bonilla's request she was reassigned to a position within the legal advisor's jurisdiction. We believe it consistent with the overall tone of *Agosto* to encourage this type of self-policing within the sector of governmental employment. While a curative step would not erase an otherwise actionable constitutional violation, we are willing to weigh this undisputed restorative act heavily in finding that no triable issue of fact exists with respect to the level of harm inflicted.

### 2. Jirau's Change in Position [9]

It is undisputed that plaintiff Jirau suffered no loss in pay and did not descend on the Civil Service job ranking. Plaintiffs argue that the position of Engineer VI is unreasonably inferior to his prior position as Deputy Director. We will therefore compare the two positions. We are supplied with relatively extensive undisputed job descriptions. *See Rodríguez–Burgos v. Electric Energy Authority*, 853 F.2d 31

---

**9.** Defendants also argue that we could determine that no political animus was involved in the transfer of Jirau merely by looking at the circumstantial facts. Defendants argue that the fact that Jirau was replaced in the position of Deputy Director by Victor Ferrer, who shares the same party affiliation as Jirau, and was in fact one of the original plaintiffs in this case, provides proof that Jirau was moved into his new job for politically neutral reasons, (*i.e.,* to make room for Ferrer). Defendants correctly point out that in *Agosto* the court specifically invited district courts facing summary judgment motions on this issue to avoid inquiring into the type of job action taken by first resolving the issue of neutral motive, and resolving the matter there. We do not think that such a resolution is appropriate in this case. The mere fact that Ferrer replaced Jirau, and was of the same political persuasion, does not negate the possibility that *both* were victims of a party-based purge, or that in the otherwise legitimate demotion of Ferrer, Jirau was singled out as the best target for removal due to his politics. Although we agree with defendants that one could infer that the shift of Jirau was the neutrally motivated result of the need to find a non-confidence position for Ferrer, we are not permitted to make inferences to assist the party moving for summary judgment. We are required to do the opposite, "indulging all reasonable inference in the [nonmovant's] favor. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Also, since we are today holding that plaintiffs suffer a failure of proof as to an essential element of their case (lack of sufficient harm) the facts surrounding political animus are now immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

(1st Cir.1988); *Méndez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1260 (1st Cir. 1987). (Court used similar forms to determine job responsibilities for purposes of summary judgment motion.)

Upon review of Jirau's duties as the Deputy Director, we see that he "coordinated activities of the staff," supervised administration on matters such as the budget, personnel, conservation, and road beautification. He advised the Director of the office on all matters related to highways. He had use of a government car.

As an Engineer VI, Jirau was in charge of the Engineering and Conservation Office, including the preparation of the budget, and technical and administrative duties. He had over 260 people under his chain of command, either reporting directly to him or indirectly through subordinates. He maintained the use of his government car. He remained in the same office. We find that while the second position was different than the first, and even *possibly inferior*, it was not so unreasonably inferior so as to constitute a constitutional transgression. Jirau maintained a position with primarily supervisory duties. He maintained control over a budget and personnel decisions. He appears to have had great leeway in decision-making and problem-solving. He drew the same salary, and remained eligible for the same increase increments. *Compare: Rodríguez–Burgos v. Electric Energy Authority*, 853 F.2d 31 (1st Cir.1988) (employee removed from trust position and placed in lower level career position, while initially at the same salary, lost potential salary increases which accompanied trust position).

Though Jirau may have been less directly involved in the inner circle of the Highway Authority director staff after the transfer, we find that to be one of the scenarios specifically foreseen as acceptable by the court in *Agosto* at 1219. There the court created a hypothetical employee whose duties, though not politically sensitive enough to allow patronage dismissal, might still have placed him or her in a position of enhanced access as a party confidante to policymaking positions. The

court opined that the loss of that favored position would not be enough to warrant judicial redress.

We find therefore, that no relevant or material factual dispute remains as to the severity of the harm inflicted on either Jirau or Bonilla by defendants, and we resolve the legal issue in favor of the defendants. The motion for summary judgment on the first amendment issue as to both plaintiffs is *granted.*

### VI.

### *Due Process*

Both plaintiffs also plead a violation of their due process rights with respect to the relevant job actions. To prevail on such a claim they must first show a property interest in that benefit of which they claim deprivation. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 576–578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Property interests flow not from the constitution but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49 (1st Cir.1990).

In Puerto Rico, "career" employees such as the plaintiffs in this case have a property interest in their continued employment. 3 L.P.R.A. § 1336(4) (1978, Supp. 1988). Such employees can only be *fired* for good cause. *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir. 1988). In this case, however, plaintiffs were not fired. Since the dimensions of the property interest are a matter of state law, plaintiffs must point to some substantive rule under the law of Puerto Rico which would give them a property interest in their specific job (protecting against transfer to a job at the same level and

salary), and then supply facts to support the contention that they were deprived of that interest in a manner inconsistent with due process.

The plaintiffs, other than citing generally to the administrative law sections of the Laws of Puerto Rico, provide us with no guidance as to the specific source of their alleged property right nor do they allege in what way defendant's actions impinged on those rights. The law governing transfers of civil service employees (3 L.P.R.A. § 1334) creates a right of employees not to be transferred to a different rank without certain procedural safeguards being employed. Here, however, plaintiffs stayed at their same rank and salary.

Even assuming that a property right exists, plaintiffs make no attempt to factually support their claim that the right was taken away without due process. We are left to guess as to what acts or omissions defendants may have committed which plaintiffs believe to violate the process to which they were due. Summary judgment for defendants as to the due process claims of both plaintiffs are, accordingly, *granted.*

## VII.

### *Qualified Immunity*

Since today we are dismissing all claims by plaintiffs against these defendants, we need not address defendants' request that they be granted qualified immunity. *Figueroa–Rodríguez v. Aquino*, 863 F.2d 1037 (1st Cir.1988); *Juarbe–Angueira v. Arias*, 831 F.2d 11 (1st Cir.1987). Without substantive constitutional violations to point to, plaintiffs have no basis for relief under 42 U.S.C. section 1983.

## VIII.

### *Conclusion*

1. Defendant's motion for summary judgment as to both plaintiffs' first amendment claims are GRANTED and the cases are herein dismissed.

2. Defendant's motion for summary judgment as to both plaintiffs' due process claims are GRANTED and the cases are herein dismissed.

IT IS SO ORDERED.