**Pedro L. RODRIGUEZ PINTO, Plaintiff,**

v.

**Cirilo TIRADO DELGADO, etc., et al., Defendants.**

**Civ. No. 86–0918 GG.**

United States District Court, D. Puerto Rico.

April 2, 1992.

---

Héctor Urgell Cuebas, San Juan, P.R., for plaintiff.

Mayra Maldonado Colón, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

This case arises from the transfer of plaintiff, a career employee of the State Insurance Fund (SIF), from his position as Chief of the Finance Division of the Treasury Area, to his current position as Assistant Chief of the Collections and Attachment Division. Plaintiff is a member of the Partido Nuevo Progresista (PNP) who has brought a cause of action alleging that he was demoted and constructively discharged from his prior position because of his PNP political affiliation. Plaintiff claims his transfer was in violation of the First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202; Section I, Article II of the Commonwealth of Puerto Rico's Constitution; and 3 L.P.R.A. § 1312 *et seq.* Plaintiff seeks declaratory and injunctive relief, back pay, damages, reinstatement, and other relief.

Defendants claim that plaintiff's transfer from his former position to his current one as Assistant Chief of the Collections and

Attachment Division was pursuant to a reorganization plan implemented by the SIF Administrator, Cirilo Tirado Delgado, shortly after taking office. Defendants state that neither plaintiff's salary nor his job classification were affected by such reorganization. Defendants further claim that plaintiff has failed to allege facts sufficient to constitute a violation of either the First or Fourteenth Amendments. Defendants' final contention is that even if a violation of plaintiff's First Amendment right to freedom of association could be established; defendants are still entitled to qualified immunity, since the law regarding the First Amendment's application to cases of political discrimination in personnel actions short of dismissal, was not clearly established at the time of their alleged discriminatory actions.

## SUMMARY JUDGMENT

The decision whether or not to grant summary judgment rests on a determination as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir. 1989). Not all conflicts of fact will bar summary judgment, "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby,* 477 U.S. at 247, 248,

106 S.Ct. at 2510 (emphasis in original); *see also Medina Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). A fact is material only if it affects the outcome of the suit. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

The nonmoving party bears the burden of production of showing that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 587, 106 S.Ct. 1348, 1356, 1356, 89 L.Ed.2d 538 (1986); *R.J. Reynolds,* 896 F.2d at 8.

In deciding whether summary judgment is proper, the court must view the record in the light most favorable to the party opposing such motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–2554, 91 L.Ed.2d 265 (1986); *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); and *Amsden v. Moran,* 904 F.2d 748, 752 (1st Cir.1990). A nonmoving party's evidence cannot be merely colorable, but must be significantly probative to show differing versions of the facts which justify a trial, *R.J. Reynolds,* 896 F.2d at 8, 10. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *R.J. Reynolds,* 896 F.2d at 8.

## FACTS

██ Plaintiff alleges that after the Partido Popular Democrático (PPD) won the 1984 gubernatorial race, Governor Rafael Hernández Colón appointed Cirilo Tirado Delgado as Administrator, and Rafael Rivera González as Director of Personnel of the SIF, both appointees being members of the PPD.[1] Plaintiff claims that shortly af-

---

1. This court can take judicial notice of the fact that the PNP and PPD are the two major political parties in Puerto Rico. *Gierbolini–Colón v. Aponte–Roque,* 848 F.2d 331, 332, n. 1 (1st Cir.

1988). This case is not the first one by public employees alleging political discrimination arising out of the change in political administrations following the defeat of incumbent PNP

ter Tirado Delgado was appointed SIF Administrator, plaintiff was removed and demoted from his prior position and defendants assigned plaintiff's former duties first to Rosa Iris Martínez, and then to Luis R. Ambert, both active PPD party members. Plaintiff claims that upon his transfer he became the assistant to someone he had previously supervised, and he was also denied the following rights and benefits he had previously enjoyed: personal secretary, parking space, telephone, supervisory functions, not allowed to "intervene with the records and documents pertaining to this office", and his "office was assigned to other persons." Plaintiff's sworn declaration, paragraph 10.

Plaintiff alleges that from his removal in July 1985 to December 1985 he was not allowed to "carry out the duties and functions" of his position, and "no duties or functions were given or assigned" to him, Plaintiff's sworn declaration, paragraph 6; and thereafter no functions or duties corresponding to his current position have been assigned him, only "nominal tasks" corresponding to a "much lower hierarchy position." Plaintiff's sworn declaration, paragraph 6. Plaintiff claims that all the tasks assigned him take no more than ten (10) minutes to perform out of his seven and a half (7½) hour shift. He also alleges that the removal from his prior position led to a reduction in salary of $289 a month, since he is now in a different salary scale. Plaintiff states that he is subject to daily ridicule and ostracism, which along with all the other circumstances of his demotion, cause him to feel that he was actually discharged from his career position.

Plaintiff alleges that defendants' claim that plaintiff's former position was eliminated pursuant to a "valid reorganization", is not true, and that such "reorganization" was in reality a "sham" designed to demote employees identified with the PNP political party, and promote PPD affiliated workers to those same positions which had previously been held by PNP affiliated employees.

governor, Carlos Romero Barceló, by PPD gubernatorial candidate Hernández Colón in November of 1984. *See Roque–Rodríguez v. Lema–Moya,* 926 F.2d 103, 104 (1st Cir.1991); and

## FIRST AMENDMENT

■ Plaintiff claims that his transfer to the current position he occupies, was an act of political discrimination against him because of his affiliation as a member of the PNP. Our Circuit made clear in *Agosto-de-Feliciano* that "at least some politically motivated actions short of discharge", violate a public employee's First Amendment right to political belief and association. *Agosto-de-Feliciano,* 889 F.2d at 1215.

The *Agosto-de-Feliciano* court recognized that there were conflicting First Amendment interests at stake when determining what kind of politically motivated government acts of discrimination against public workers, short of actual dismissal, should warrant constitutional protection. On one side is the government interest in assuring that newly elected administrations be allowed to effectively implement their policies, which the electorate has apparently sanctioned, despite their adverse effect on certain public employees; versus an individual public worker's right to pursue his First Amendment rights of free association and belief, free of government harassment. *Id.*

Our Circuit in *Agosto-de-Feliciano,* adopted a "severity of harm" threshold, and held that politically motivated employer actions which fail to reach that threshold, should not be considered a significant enough burden on employee's First Amendment rights of political association to enjoy constitutional protection. *Id.,* 889 F.2d at 1216. The threshold is reached only when the employer's challenged actions, "result in a work situation 'unreasonably inferior' to the norm for the position." *Id.,* 889 F.2d at 1218. The "severity of harm" adopted by our Circuit has two components to it:

1) the substantive standard that the work situation be "unreasonably inferior" to the norm;

2) the procedural requirement that plaintiff must establish a change in work con-

*Agosto-de-Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1212, n. 1 (1st Cir.1989) (listing representative cases).

ditions "sufficiently severe" to meet this substantive standard by producing "clear and convincing evidence." *Id.*, 889 F.2d at 1220.

Plaintiff here has failed to meet his burden of establishing by clear and convincing evidence that the alleged discriminatory acts taken against him, satisfy the severity of harm standard. To summarize plaintiff's claims in a thumbnail sketch, plaintiff asserts that after his transfer:

1) he was denied various rights and benefits he previously had;

2) he had either no duties or functions, or else none corresponding to his current position;

3) he had some reduction in salary through smaller raises in his new pay scale;

4) he suffered daily ridicule and ostracism; and

5) that the so-called reorganization was a fraudulent pretext for demoting the members of the PNP, and promoting supporters of the PPD.

Plaintiff's opposition to defendant's summary judgment relies on the allegations contained in the verified complaint, and plaintiff's sworn declaration. There is no other factual support in the evidentiary record to support plaintiff's conclusory allegations. It is clear that more is required by plaintiff to satisfy his burden of showing that "they reach the threshold for severity of harm" required under *Agosto-de-Feliciano.*

This court found similar claims insufficient in a post *Agosto-de-Feliciano* case, "Plaintiff Bonilla does allege in the complaint and in a later affidavit that she 'was sent to the construction area without any assignment, duties or supervision.' This bare allegation, however, is nowhere supported factually in the record, ... Since this allegation remains as a bare, unsupported pleading, we do not believe that plaintiff has succeeded in generating a genuine factual dispute with regard to her day-to-day duties during the hiatus to the con-

struction area. She has not produced 'any significant probative evidence tending to support the complaint' with respect to this allegation." *Zayas Rodríguez v. Hernández*, 748 F.Supp. 47, 50–51 (D.P.R.1990) (internal footnote omitted); *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

There is no way for this court to compare plaintiff's former position with his current one to determine whether it is "unreasonably inferior", without any more detailed description of the two positions.[2] Plaintiff has failed to produce enough evidence even to satisfy a preponderance of evidence standard, much less the clear and convincing evidence required by *Agosto-de-Feliciano. See Zayas Rodríguez*, 748 F.Supp. at 50. ("We note that since the burden of proof as to the severity of the change in conditions for political discrimination cases has been set by the First Circuit as 'clear and convincing' evidence, *Agosto*, 889 F.2d at 1220, we must be guided by that higher proof burden standard in determining whether a factual dispute requiring trial exists. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. For the summary judgment motion to be defeated, we would have to find that plaintiffs have produced sufficient facts as to all material elements, including severity in change of job circumstances, so that a reasonable trier of fact could find for them by 'clear and convincing' evidence. *Id.*")

Implicit in our finding that plaintiff has failed to meet the severity of harm threshold under *Agosto-de-Feliciano*, is a finding that plaintiff has not been constructively discharged, since plaintiff has failed to meet the lesser burden of showing a First Amendment violation for politically motivated employer action short of dismissal. *See Núñez–Soto v. Alvarado*, 918 F.2d 1029, 1030–1031 (1st Cir.1990); *Agosto-de-Feliciano*, 889 F.2d at 1217–1218; *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561–563 (1st Cir.1986); and *Ali-*

---

**2.** Our Circuit has specifically approved the use of employee description forms in political discrimination cases, to help determine the nature of the jobs being examined. *Zayas Rodríguez,* 748 F.Supp. at 50, n. 5.

*cea–Rosado v. Garcia–Santiago*, 562 F.2d 114, 119–120 (1st Cir.1977).

Our Circuit has noted the necessity of sufficient specificity in pleadings when alleging discrimination in a civil rights action, to prevent abuse of the process by plaintiffs, "A civil rights complaint must 'outline facts sufficient to convey specific instances of unlawful discrimination.' *Dartmouth Review* [*v. Dartmouth College*], 889 F.2d [13] at 16 [1st Cir. (1989)]. Put another way, a plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus. The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and as a logical exercise, adequately support the thesis that the discrimination was unlawful." *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49 (1st Cir.1990). Since plaintiff failed to show by clear and convincing evidence that the alleged harm he suffered was severe enough to meet the threshold, we need not go to the next step, where plaintiff would have to show by a preponderance of the evidence that the diminution in his duties was motivated by discrimination on the basis of political affiliation.

Plaintiff would likewise fail to meet his burden here, of showing that the alleged discriminatory act of defendants, was motivated by an intent to discriminate against plaintiff, because of his political affiliation. Plaintiff asserts that the reorganization which led to his transfer was a sham, a mere pretext to mask defendants' true discriminatory motives. Plaintiff produces no other factual data to back up such assertions.

Defendants have asserted that they are entitled to a changeover defense, and have provided a facially legitimate neutral reason for the reorganization—to improve the efficiency in distribution of compensation benefits, and reduce the backlog of claims. Plaintiff has failed to show by a preponderance of the evidence that defendants' true motivation was discriminatory animus, based on plaintiff's political affiliation.

We thus find that plaintiff has failed to establish that any alleged diminution in his responsibilities after his transfer meets the severity of the harm threshold necessary to assert a First Amendment claim for political discrimination; and that plaintiff has also failed to show that any actions defendants took where motivated by a discriminatory animus against him because of his PNP affiliation. Summary judgment is hereby GRANTED defendants on the First Amendment political discrimination issue.

■ Since we find plaintiff has failed to offer sufficient proof as to such essential elements of his case, as "severity of harm", and "political animus", we need not decide the issue of qualified immunity. Yet even if plaintiff had made out a legitimate case for political discrimination short of dismissal under the *Agosto-de-Feliciano* standard, we would still grant defendants summary judgment on the issue of qualified immunity. The doctrine of qualified immunity is designed to protect government employees who exercise discretionary authority, from civil liability, "insofar as their conduct does not abridge clearly established rights, statutory or constitutional, about which a reasonably prudent official should have been aware." *Roque–Rodríguez*, 926 F.2d at 107; *citing Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Although it was settled law that firing of public employees for partisan reasons violates the First Amendment, unless political affiliation was an appropriate requirement, *see Roque–Rodríguez*, 926 F.2d at 108, *citing Branti v. Finkel*, 445 U.S. 507, 516–517, 100 S.Ct. 1287, 1293–1294, 63 L.Ed.2d 574 (1980); and *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); lower courts were in considerable turmoil, as to what, if any, acts of political discrimination against public employees short of discharge were unconstitutional. The Supreme Court finally resolved this issue in *Rutan v. Republican Party of Illinois*, where it held that First Amendment protections extend to promotion,

transfer, recall, or hiring decisions involving public employment positions for which party affiliation is not an appropriate requirement. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *see also Agosto-de-Feliciano*, 889 F.2d at 1214 (surveying the divergent approaches various federal circuits had taken to claims of political discrimination short of dismissal).

Our Circuit has explicitly held that, "It seems to us fairly obvious that, as of 1985, the law did not *clearly* state that a politically motivated *demotion* violated the federal Constitution. The Supreme Court, of course had made clear that the Constitution forbids *discharge* of public employees for reasons of political affiliation ... But, the law was unclear about the extent to which the Constitution protected career personnel against politically motivated adverse personnel actions that did not rise to the level of a *discharge*." *Núñez-Soto*, 918 F.2d at 1030; *see also Roque-Rodríguez*, 926 F.2d at 108–109; and *Agosto-de-Feliciano*, 889 F.2d at 1214–1216.

Plaintiff claims that his transfer in July of 1985 was unconstitutional political discrimination under the First Amendment, because of his political affiliation. Since the First Circuit has unambiguously stated that the law regarding political discrimination short of discharge was not clearly established in our circuit until December of 1989, when *Agosto-de-Feliciano* came down, defendants would be entitled to qualified immunity. Although the law regarding constructive discharges was clearly established prior to 1985, *see Alicea-Rosado*, 562 F.2d at 119–120, we have already found above that the alleged discriminatory transfer does not constitute a constructive discharge. Thus defendants would be entitled to qualified immunity for their transfer of plaintiff in 1985, even if, arguendo, such transfer would be found to violate the First Amendment today in the post *Agosto-de-Feliciano* era.

DUE PROCESS

The complaint alleges that plaintiff's property rights are being adversely affected by defendants' actions in violation of the Fourteenth Amendment. The due process clauses of the U.S. Constitution provide that a person cannot be deprived of life, liberty or property without constitutionally adequate procedures. *Pietri Bonilla v. Alvarado*, 762 F.Supp. 451, 460 (D.P.R.1991); *citing Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The law is well settled that property interests protected under the Fourteenth Amendment's due process clause are not created by the Constitution itself, "but rather 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Ruiz-Roche v. Lausell*, 848 F.2d 5, 7 (1st Cir.1988); *quoting Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491; *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Employees classified as "career employees" under Puerto Rico law have a property right in continued employment and may be fired only for good cause. *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir.1988); and *Zayas Rodríguez*, 748 F.Supp. at 55.

The problem plaintiff encounters with his due process argument is that he has not been fired, so he has not lost his property interest. *Pietri Bonilla*, 762 F.Supp. at 459. Plaintiff points to no substantive rule which gives him a cognizable interest in continued employment as Chief of the Finance Division, rather than as Assistant to the Chief of Collections within the SIF. Plaintiff was merely transferred to another position, either with the same rank and salary according to defendants; or with some reduction in potential pay raises if we credit plaintiff's version. No evidentiary documentation was submitted on this issue by either side to back up their assertions.

Plaintiff fails to meet his burden of showing he had a continued property right in the same position, or that deprivation of potential salary increases is a protected property right. We have already held that plaintiff has failed to prove that his transfer was a constructive discharge. It is

likewise clear in our Circuit that the mere fact that a plaintiff's ability to receive future pay raises is adversely affected by a transfer does not mean that such transfer is a constructive discharge. *See Núñez–Soto,* 918 F.2d at 1031. (No constructive discharge found where plaintiff had no direct salary cut, but on at least one occasion did not receive as large a salary increase as she would have in prior position).

We find that plaintiff had no property right to continued employment as Chief of the Finance Division, or a position with the exact same potential for salary increases as his prior one. *See Pietri Bonilla,* 762 F.Supp. at 461; and *Zayas Rodríguez,* 748 F.Supp. at 55, 56. Summary judgment for defendants on plaintiff's due process claim is hereby GRANTED.

We have disposed of all federal questions contained within plaintiff's complaint. The complaint also alleges pendent claims under Section I, Article II of the Puerto Rico Constitution; and 3 L.P.R.A. § 1312. We decline to exercise pendent jurisdiction over the remaining claims arising under the laws and Constitution of Puerto Rico. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); and *Correa–Martínez,* 903 F.2d at 58, ("In the absence of a cognizable federal question, a federal court cannot intrude upon another sovereign's civil service system and declare itself a court of last resort to hear personnel appeals addressed to the wisdom, or even the good faith, of staffing decisions reached by the government actors.")

This court finds that there are no material issues of fact remaining, such that a trial would be necessary. Accordingly, we GRANT defendants' motion for summary judgment on both the First Amendment and due process issues. Plaintiff's cause of action is hereby DISMISSED and judgment shall be entered accordingly.

SO ORDERED.