Victor R. RODRIGUEZ–BURGOS, Plaintiff, Appellant,

v.

ELECTRIC ENERGY AUTHORITY, et al., Defendants, Appellees.

No. 87–2059.

United States Court of Appeals, First Circuit.

Heard June 8, 1988.

Decided Aug. 3, 1988.

Pedro Miranda Corrada, San Juan, P.R., with whom Hector Urgell Cuebas, Santurce, P.R., was on brief, for plaintiff, appellant.

Alice Net Carlo with whom Law Offices of Garcia Rodon, Correa Marquez & Valderas, Hato Rey, P.R., were on brief, for defendants, appellees.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

The plaintiff, Victor R. Rodriguez–Burgos ("Rodriguez–Burgos" or "the plaintiff"), brought an action pursuant to 42 U.S.C. § 1983 and Puerto Rican law against defendants, Puerto Rico Electric Power Authority ("PREPA" or "Authority") and certain PREPA officials. He claimed that the defendants violated his rights under the First and Fourteenth Amendments and Articles I and II of the Puerto Rico Constitution by removing him from an executive position at the Authority and placing him in a lower level managerial position. Rodriguez–Burgos sought reinstatement to his former position, damages, and backpay. The defendants moved for summary judgment, asserting qualified immunity from the plaintiff's damages claims and arguing that the district court should dismiss the plaintiff's case because political affiliation was an appropriate requirement for the performance of the plaintiff's former position. The district court granted the defendants' motion on both grounds, dismissed the plaintiff's case and entered judgment for the defendants. Rodriguez–Burgos now appeals. We affirm the district court's decision on the qualified immunity question, but vacate the entry of summary judgment for defendants on the merits of the plaintiff's claims for injunctive relief.[1]

## I. BACKGROUND

In June, 1981, Rodriguez–Burgos, a member of the Partido Nuevo Progresista

---

1. Rodriguez–Burgos does not appeal the district court's dismissal of his claims under the Four-teenth Amendment or Puerto Rican law.

(PNP), was appointed to the position of Head of the Material Management (or Supplies) Division at PREPA [2] by then Executive Director, Alberto Bruno Vega. After the defeat of the PNP by the Partido Popular Democratico (PPD) in the gubernatorial election of November, 1984, Governor Hernandez Colon appointed a new PREPA Executive Director, Carlos Alvarado (one of the named individual defendants herein), to replace Bruno Vega. In January, 1985, Alvarado, with the approval of the PREPA Governing Board, removed Rodriguez–Burgos from his position as Head of Materials Management and reassigned him to the position of Supervisor of Studies and Field Investigations of the Engineering Division.

Rodriguez–Burgos's former position was categorized as an executive level appointment and was classified as a "trust" or "confidential" position under the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, §§ 1349–51 (1980 & Supp. 1987). His new job is categorized as managerial and is not classified as trust or confidential. While the salary level is the same for each job, the plaintiff alleges in his complaint that "he will not be able to receive salary increases which would have routinely accrued to him had he remained in his previous position."

Rodriguez–Burgos and the defendants do not dispute the official job description for the position of Head of the Supplies Division, which provides as follows:

*Functions and Responsibilities of the Job:*

This is professional and administrative work at an executive level which consists of supervising a considerably large group of employees who perform functions related to the purchases and warehouses of the Authority. Formulates and recommends the policies, practices and procedures for the acquisition of equipment and materials and the control of costs and quality of same. As well as the storage, control of inventories and the receipt and dispatch of materials and equipment. Performs work under general supervision and exercises a high degree of criteria [sic], initiative and self-judgment. The work is judged through conferences and written reports.

*Illustrative Examples of the Job:*

Directs, organizes, coordinates, plans and supervises the activities related to the purchase and storage of the materials and equipment of the Authority.

Formulates and recommends policies, practices and procedures related to the purchase and storage of materials and equipment.

Is responsible for selling obsolete or unnecessary material for the Authority.

Is responsible for all activities related to the auctions of the Authority.

Recommends and administers the annual operations budget of the Division.

As set forth in the organizational chart of PREPA (attached hereto as Appendix I) and the by-laws of PREPA,[3] the position of Head of the Materials Management (or Supplies) can best be described as a third tier administrative post within the Authority: the Head of the Supplies Division answering to the Director of Administrative Services who, in turn, answers to the Executive Director.

Rodriguez–Burgos claims that the defendants unlawfully removed him from his former position because of his political affiliation with the PNP. The defendants assert that political affiliation with the PDP is an appropriate requirement for the proper functioning of the Head of the PREPA Supplies Division and, in any

---

**2.** The position is titled both "Head, Supplies Division" and "The Head—Materials Management Division." We use both titles interchangeably to describe the plaintiff's former position at PREPA.

**3.** The PREPA by-laws describe the responsibilities of the plaintiff's former position as follows:

The Head, Materials Management Division shall have responsibility under the general supervision of the Director–Administrative Services for the procurement of supplies and equipment; and of all warehousing activities. He shall be responsible for the custody and control of all inventories of materials and equipment; and shall be responsible also for the contracting thereof as shall be necessary and/or proper for the conduct of the business of the Authority.

event, they are entitled to "qualified immunity" from the plaintiff's damages claims. We address the qualified immunity question first.

## II. QUALIFIED IMMUNITY

### A. *The General Rule and Its Limited Application*

Assuming *arguendo* that Rodriguez–Burgos's demotion was unlawful, the disposition of the defendants' claim to qualified immunity from damages turns on the question whether, as of the time of the demotion, January, 1985, the defendants' actions were *clearly* unlawful. *Juarbe–Angueira v. Arias,* 831 F.2d 11, 12 (1st Cir.1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1193 (1st Cir.1986). Our precedents establish that "for the most part, in early 1985, the law did not *clearly* forbid dismissals of those in 'upper-level' managerial-type government positions." *Juarbe–Angueira,* 831 F.2d at 13. This is so because "there was no clearly established constitutional protection against patronage dismissal for those individuals whose positions potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication." *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1259 (1st Cir.1987) (en banc).

Having set forth this general rule, however, we have struggled to distinguish among positions that fall in the "middle of the spectrum"; that is, we have tried to devise a method for drawing a line between those in the "upper-level" positions who were not clearly protected from politically motivated dismissals and those in the mid-

or lower levels of government hierarchy who were protected.[4] As will become clear from the discussion that follows, we need not struggle long in this particular case. Applying the general rule, we are able to conclude as a matter of law that the defendants are entitled to qualified immunity from Rodriguez–Burgos's damages claims; his former position at PREPA potentially involved politically sensitive work at the Authority and therefore was not clearly protected against politically motivated dismissal.

■ We emphasize at the outset, however, that in deciding this qualified immunity issue, we do not resolve close questions of fact or law related to the merits of the plaintiff's claim in light of the law as it exists today. The applicable standards, as derived from the general rule enunciated in *Mendez–Palou,* reflect the state of the law in early 1985, when PDP-appointed officials actually implemented the employment decisions that have resulted in the flood of "patronage dismissal" cases from Puerto Rico. Being particularized reflections of the general state of the law at that time, they are useful only for the narrow purpose of determining what were *not clearly* "protected" governmental positions. *See Juarbe–Angueira,* 831 F.2d at 12 (decision granting partial summary judgment for defendants on qualified immunity ground expresses nothing about plaintiff's entitlement to reinstatement); *Mendez–Palou,* 813 F.2d at 1261 (same). In short, our task in disposing of the qualified immunity question is to ascertain "what a reasonable person would have known as to the state of the law" at the time of the alleged unlawful acts, "not what the actual answer is" in the particular case. *De Abadia v. Izquier-*

---

**4.** Currently pending before our court for rehearing en banc are three cases in which government officials seek qualified immunity from damages in cases involving discharges of mid- or upper-level governmental employees. Although one of those cases, *Fontane–Rexach v. Puerto Rico Electric Power Authority,* No. 87–1801 (1st Cir. April 22, 1988), would appear, at first blush, to involve a qualified immunity question identical to the one before us, factual distinctions in *Fontane–Rexach* persuade us that

we need not await the *en banc* disposition to reach our decision here. Unlike the plaintiff in *Fontane–Rexach,* Rodriguez–Burgos's former position as Head of the Supplies Division at PREPA was classified by the Puerto Rico Legislature as a "trust" or "confidential" position. And the plaintiff in *Fontane–Rexach* was ranked below Rodriguez in the PREPA hierarchy as "Assistant Head, Supply Division (Purchases)."

*do Mora,* 792 F.2d at 1195 (Campbell, C.J., concurring). *See also Goyco de Maldonado v. Rivera,* 849 F.2d 683, 686 (1st Cir. 1988) (distinguishing between standard applied to review of preliminary injunction, qualified immunity, and merits). While there may be overlapping considerations it does not necessarily follow that just because, in a particular case, summary judgment may be proper on the qualified immunity question, it will also be proper on the merits of the plaintiff's claim. *See infra* part III.

### B. *The Standards Applied*

Turning then to our assessment of whether the plaintiff's position was clearly protected from patronage dismissal, we focus narrowly on the undisputed record facts regarding the nature of the job responsibilities relative to the government agency's undertakings that might be subject to partisan political disputes. *Mendez–Palou,* 813 F.2d at 1260. Put another way, our task is to discern whether, from the undisputed facts, "the inherent powers and responsibilities" of the plaintiff's job made it one that could influence politically sensitive matters. *Id.* Our method of analysis is to look first at the extent to which PREPA is involved in politically sensitive activities and second at the extent to which the plaintiff's position could influence those activities. *See, e.g., Goyco de Maldonado v. Rivera,* 849 F.2d at 684–685; *Juarbe–Angueira,* 831 F.2d at 14–16; *Mendez–Palou,* 813 F.2d at 1260–1263.

■ The Authority's enabling legislation, the Puerto Rico Electric Power Authority Act, P.R.Laws Ann. tit. 22, §§ 191–239 (1987), provides:

> The Authority is created for the purpose of conserving, developing, and utilizing, and aiding in the conservation, development, and utilization of water and energy resources of Puerto Rico, for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits there-

of, and by this means to promote the general welfare and increase commerce and prosperity; and the Authority is granted and shall have and may exercise all rights and powers necessary or convenient for the carrying out of the aforesaid purposes....

P.R.Laws Ann. tit. 22, § 196.[5] Clearly, the Authority exercises broad powers in the implementation of the island's economic development policies. Economic development, in turn, is one of the most pressing political issues on the island. That PREPA is engaged in what might be termed a "politically sensitive mission," *see Mendez–Palou,* 813 F.2d at 1260, seems to us self-evident.

■ The second part of our inquiry—whether the inherent responsibilities and duties of the plaintiff's job place him in a position to influence matters within the Authority that could be subject to partisan differences—is a closer question. Looking to the undisputed job description, the defendants argue that the position involves policymaking, communicative, and confidential tasks. But placing the inherent duties of the plaintiff's job within those categories does not suffice, by itself, to satisfy the second step of the qualified immunity inquiry. The inherent responsibilities of the position must still potentially "have a bearing on the partisan goals and policies" of the Authority. *Mendez–Palou,* 813 F.2d at 1263. Just because the job involves policymaking within the Supplies Division of PREPA does not necessarily show that it potentially affects the politically sensitive activities of the larger organization. *Cf. De Choudens v. Government Development Bank of Puerto Rico,* 801 F.2d 5, 9 (1st Cir.1986) (en banc) (plaintiff, as head of the Finance Area at Puerto Rico Government Development Bank, not necessarily involved in the partisan political concerns of the Bank).

We are confident, however, that on the record before us the district court's qualified immunity determination was proper.

---

5. As a quasi-public corporation, *see* P.R.Laws Ann. tit. 22, § 193 (1987), PREPA can sue and be sued, *id.* § 196(e).

Although, as the plaintiff points out, the job description indicates that his former position involved, in large part, the application of technical and professional skills to the politically neutral task of equipment procurement, there are indicators of at least potential involvement in politically sensitive matters. The position was at the third tier in the PREPA hierarchy, only two steps removed from the Executive Director. According to the job description, the position entailed "supervising a considerably large group of employees." It involved broad policymaking responsibilities, including the recommendation and implementation of the Supply Division's budget. And it was marked by a high degree of autonomy, self-initiative, and "self judgment."

It is possible to surmise, from these aspects of the job, particular ways in which the position could entail policymaking, communicative, and confidential tasks that *might* have some bearing upon matters of partisan political concern. The responsibility of supervising staff within the Supplies Division *could* bring with it the responsibility of advancing the policy agenda of PREPA. *See Goyco de Maldonado v. Rivera*, 849 F.2d at 687; *De Abadia*, 792 F.2d at 1194, n. 1 (Campbell, C.J., concurring) ("relative ... power to control others" is "[a]mong the indicia that locate a job along the spectrum between policymaker and clerk") (quoting *Ecker v. Cohalan*, 542 F.Supp. 896, 901 (E.D.N.Y.1982) (Weinstein, C.J.)). Control over the supplies division budget *could* carry with it the potential to affect politically sensitive matters regarding the allocation of PREPA resources. Finally, the broad discretion given to the positionholder to operate on "self-initiative" *could* give the position some policymaking responsibility. *See Elrod v. Burns*, 427 U.S. 347, 368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976) ("An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position."); *Mendez–Palou*, 813 F.2d at 1262. We emphasize *"could"* in each instance because, at this stage—where we are attempting to ascertain whether the defendants could objectively perceive their demotion of the plaintiff to be clearly unlawful—we are constrained to consider only whether the job *potentially* entailed political components. We think that it could.

Our assessment of the potential for the Head of Supplies to influence, be privy to, or communicate in regard to politically sensitive matters of the Authority is reinforced by the fact that the Puerto Rico government perceives the job to be sufficiently connected to the Authority's politically charged activity to classify the position as one of the relatively few "trust" or "confidential" governmental posts in the Authority. While we have said that this classification does not, by itself, determine qualified immunity questions, *see, e.g., Juarbe–Angueira*, 831 F.2d at 14, it seems particularly helpful in drawing distinctions between mid-to-upper level government positions that were or were not "protected" under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). More specifically, in the instant case, it shows that from the government's point of view, it was not *clear* that the job's policymaking components were strictly technical and devoid of political impact.

In sum, we conclude that the job of Head of the Supply Division at PREPA potentially involves at least a *"modicum"* of "policymaking responsibility" related to matters within the Authority that might be subject to partisan political dispute. *See Juarbe–Angueira*, 831 F.2d at 15. The defendants were thus entitled to qualified immunity from the plaintiff's damages claims since the plaintiff held the type of upper-level management or administrative post that was not *clearly* protected against patronage dismissals under *Elrod, Branti*, and their progeny as of January, 1985.

### III. INJUNCTIVE RELIEF

■ After resolving the qualified immunity question favorably to the defendants, the district court turned to the merits of the plaintiff's claim for injunctive relief, stating:

A further review of the entire record reveals that plaintiff's request for injunctive relief must also be dismissed. A review of the undisputed job description or classification questionnaire OP–16 demonstrates that as a matter of law and in accordance with the jurisprudence the position of Head of Materials Management Division at the Puerto Rico Electric Power Authority held by plaintiff is such that political affiliation is an appropriate requirement for the effective performance of the position.

We cannot agree with this cursory dismissal of the merits of the plaintiff's claim for injunctive relief. Although analysis of the undisputed job description alone is sufficient to dispose of the qualified immunity question, it is an insufficient basis for determining whether the defendants were entitled to summary judgment on the merits of the plaintiff's claim for reinstatement.

To be entitled to summary judgment on the latter question, the defendants were required to show that there existed no issue as to any material fact and that they were entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). They argued before the district court and they continue to argue before us that there can be no dispute that political affiliation was an appropriate requirement for the position of Head of Material Management at PREPA and that they are therefore entitled to judgment as a matter of law because the position is not protected under *Elrod, Branti,* and their progeny. We disagree.

We review the facts in the record in the light most favorable to the party against whom summary judgment was granted, *e.g., Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1171 (1st Cir.1988), in this case Rodriguez–Burgos. The undisputed evidence concerning the duties and responsibilities of the Head of Materials Management at PREPA, including the organizational chart of the Authority (Appendix I), the description of the position in the Authority's bylaws (*see supra* note 3), and the undisputed job description, do not establish, as a matter of law, that political affiliation is a requirement for effective performance. Quite the contrary, viewing that evidence in the light most favorable to Rodriquez–Burgos, it appears that it is a middle-tier administrative post requiring primarily technical skills. There may be policymaking, confidential, and communicative aspects of the job that *could* relate to the Authority's politically sensitive activities, but there remains, in our view, an important factual dispute about whether or not the job requires PDP affiliation for effective performance.

We find instructive, in this regard, our decision in *De Choudens v. Government Development Bank of Puerto Rico,* 801 F.2d 5, a companion case to *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), where—after surveying the law from *Elrod* and *Branti* onwards—we set forth standards for determining the merits of political discharge cases. In *De Choudens,* we reviewed the propriety of the district court's grant of a preliminary injunction in favor of the plaintiff, who contended that officials at the Puerto Rico Development Bank violated her First Amendment rights by demoting her—for political reasons—from a "trust" position as Senior Vice President of the Finance Area to a lower level career position. At that stage in the proceedings, where we considered only "probable outcomes" with regard to the merits of the action and whether the distict court abused its discretion in its assessment of those probable outcomes, we upheld the preliminary injunction. We said:

> The instant case ... presents us with a staff official who, while indubitably in a policymaking, confidential, and communicative position, is both empowered and constrained by the limits of her specialized functions. Because her division is not a microcosm of the larger agency, it is insufficient to show that she is a policymaker for a Bank that involves partisan political concerns.

*De Choudens,* 801 F.2d at 9.

Similarly, in the instant case, the Supplies Division at PREPA is not a microcosm of the larger organization. Just because the Head of that Division engages in the policymaking, communicative, and confi-

dential matters of the Division, it does not necessarily follow that he is connected with the political concerns of the Authority. Indeed, given the procedural posture of this case, Rodriguez–Burgos's case is even stronger than that of the plaintiff in *De Choudens*. Viewing the evidence in the light most favorable to him, it would seem that the position of Head of Materials Management at PREPA involves politically neutral, technical and professional matters: the buying, selling, and storing of PREPA equipment.

Inklings that the position may have some impact upon PREPA's politically sensitive activities—those that we suggested might exist in our consideration of the qualified immunity issue—may turn out, upon the development of facts at trial, to be real and substantial. At this stage of the proceedings, there remains a genuine and material dispute over whether political affiliation was an appropriate requirement for the plaintiff's former position.

*That part of the judgment granting the defendants qualified immunity is affirmed, the part of the judgment dismissing the plaintiff's claim for reinstatement is vacated. The case is remanded to the district court for further proceedings consistent with this opinion.*

APPENDIX I

PUERTO RICO ELECTRIC POWER AUTHORITY

GOVERNING BOARD

EXECUTIVE DIRECTOR

- JUDICIAL CONSULTANT
- FUEL OFFICE
- CHIEF ENGINEER — Engineering / Irrigation

COMMUNICATIONS OFFICE

INTERNAL AUDIT

**DIRECTORATE ELECTRICAL SYSTEM**
- Promotion Div.
- Div. Operation Electrical System
- Div. Conservation Electrical System

**FINANCE DIRECTORATE**
- Treasury Div.
- Accounting and Budget Div.
- Information Systems Div.
- Retirement Sys.
- Risks and Control : Losses Off.
- Internal Audit Office

**DISTRIBUTION AND SERVICES DIRECTORATE**

Asst. DIR. DISTRIBUTION
- Distribution Div.

ASST. DIRECTOR CONSUMER SERVICES
- CONSUMER SERVICES DIV.
- CONSUMER AFFAIRS OFFICE

**ADMINISTRATIVE SERVICES DIRECTORATE**
- Supplies Div.
- Land Transportation Div.
- General Services Div.
- Appraisal and Real Property Dept.
- Administrative Services Office
- Internal Protection Off.

REGIONAL DIR. SAN JUAN TECHNICAL OPERATIONS

REGIONAL DIR. SAN JUAN COMMERCIAL OPERATIONS

REGIONAL DIR. BAYAMON

REGIONAL DIR. ARECIBO

REGIONAL DIR. MAYAGUEZ

REGIONAL DIR. PONCE

REGIONAL DIR. CAGUAS

Certified to be a correct translation made and/or submitted by interested party.
Evelyn Hansen Todd, U.S.C.C.I.
November 1, 1986

CERTIFIED TO BE A CORRECT TRANSLATION FROM ITS ORIGINAL
AIDA TORRES
10/31/86

**40**

TORRUELLA, Circuit Judge (concurring in part, dissenting in part).

Because I continue to adhere to my views regarding qualified immunity and what I consider to be "clearly established law," *see Rosado v. Zayas*, 813 F.2d 1263, 1267 (1st Cir.1987) (Torruella, J., dissenting); *Juarbe-Angueira v. Arias*, 831 F.2d 11, 17 (1st Cir.1987) (Torruella, J., dissenting), I cannot concur in Part II of the majority opinion. I do concur, however, in the other parts of this opinion.