Roberto A. PIETRI BONILLA, Plaintiff,

v.

Carlos M. ALVARADO, individually and as Executive Director of the Puerto Rico Electric Power Authority; Pedro J. Ruiz De Jesus individually and as Director of the Division of Internal Security of the Puerto Rico Electric Power Authority, Defendants.

Civ. No. 89–899 GG.

United States District Court, D. Puerto Rico.

March 26, 1991.

452

Raúl Barrera Morales, Santurce, P.R., for plaintiff.

Luis N. Blanco Matos, Federal Litigation Div., Dept. of Justice, and Karen M. Loyola, San Juan, P.R., for defendant.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This civil rights action is representative of the new wave of political discrimination cases that has flooded this district and it rolls in the form of a "political demotion" claim. Plaintiff Roberto Pietri Bonilla alleges that his constitutional rights under the First and Fourteenth Amendments of the U.S. Constitution were violated when he was "demoted" from the position he occupied as Administrator of the Office of Internal Security of the Puerto Rico Electric Power Authority (PREPA) to the position of Advisor to the Director of the Division of Internal Security. Plaintiff seeks reinstatement to his former position, damages and attorney fees under 42 U.S.C. § 1983 and various state laws.[1]

Defendants filed a motion for summary judgment on May 11, 1990, asserting first that political affiliation is an appropriate requirement for the effective performance of the position of Administrator of Internal Security of PREPA; and second that under the standards set forth in *Agosto–D–Feliciano v. Aponte–Roque*, 889 F.2d 1209 (1st Cir.1989), they could not be held liable.[2]

---

1. P.R. Const., Arts. I & II, 3 L.P.R.A. § 1301 *et seq.* and 31 L.P.R.A. § 5141.

2. Defendants also argued that plaintiff failed to establish a *prima facie* case of political discrimination. We disagree. The record provides suf-

ficient basis for a reasonable jury to infer that plaintiff's exercise of his free associational rights was a "substantial factor" in his reassignment. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Additionally, defendants contend

## I. SUMMARY JUDGMENT

In determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Amsden v. Moran*, 904 F.2d 748 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989).

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) establishes that the party moving for summary judgment has the initial burden of showing "the absence of a genuine issue concerning any material fact." *Id.* at 159, 90 S.Ct. at 1609. If the movant shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.[3] The materiality of a fact is determined according to the substantive law that governs the dispute. A fact is materi-

al only if it affects the outcome of the suit. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510.

In deciding defendants' motion for summary judgment, we examine the facts in the light most favorable to the non-moving party, in this case, plaintiff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Roy v. Augusta,* 712 F.2d 1517 (1st Cir.1983). Applying this standard, and after an extensive review of the record, and according the non-moving party the indulgence required, we find that plaintiff have not presented specific facts showing a genuine issue for trial. *Medina Munoz v. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

## II. BACKGROUND

This suit arises out of the 1984 election in Puerto Rico, in which Rafael Hernández Colon, the candidate for governor of the Partido Popular Democrático (PPD), defeated the incumbent governor and candidate of the Partido Nuevo Progresista (PNP), Carlos Romero Barceló. Plaintiff, a career employee with PREPA,[4] is identified and affiliated with the Partido Nuevo Progresista (PNP). After Hernández Colon became Governor of Puerto Rico on January 2, 1985, he appointed co-defendant Carlos M. Alvarado to the position of Executive Director of PREPA. Alvarado ap-

---

they are entitled to qualified immunity. In view of our disposition of defendants other defenses, we need not reach this issue.

**3.** *See generally* Louisell, Hazard & Tait, *Cases and Materials on Pleading and Procedure: State and Federal* 170 (6th ed. 1989) ("[A]s the Court stated in *Celotex*, the nonmoving party does not necessarily have to produce evidence in a form that would be admissible at trial. And, as the *Adickes* Court said, the nonmoving party does not have to adduce evidence at all until the moving party satisfies its initial burden of showing the absence of a genuine issue of fact").

**4.** Under Puerto Rico's Public Service Personnel Act a career employee is selected based on merit and can be removed only for cause. 3 L.P.R.A. §§ 1301, 1331–1338. However, the Personnel Act does not apply to PREPA because PREPA operates as a private enterprise. 3 L.P.R.A. § 1338. Under the Personnel Act, PREPA is merely required to adopt "personnel regulations embodying the merit principle" of the Act. *Id.* at § 1338.

pointed co-defendant Pedro J. Ruiz de Jesus to the position of Director of the Division of Internal Security.

### III. FACTS

Plaintiff began working for PREPA on August 31, 1976 as a Specialist in Internal Security in PREPA's Office of Internal Protection. By December 1978, plaintiff had been promoted to Administrator of the Office of Internal Security. This position was classified as an Executive level (E–1) and under the PREPA personnel regulations it was considered a "trust" position.[5] Plaintiff held this position until July 1988, when he was reassigned to the position of Advisor to the Director of Internal Security.

On January 1985, co-defendant Carlos M. Alvarado was appointed to the position of Executive Director of PREPA. Plaintiff alleges that Alvarado and his subordinates demoted him because he was identified with the PNP. Specifically, plaintiff refers to the following incidents as indicative of retaliation for his political beliefs:

(1) On September 3, 1985, plaintiff requested to address the Board of Directors of PREPA regarding the security of several electrical installations. The request was denied.

(2) On September 24, 1985, the Director of Administrative Services, Ramón Vicente, held a meeting with Jose Milan Dávila, a Supervisor in the Office of Internal Security. Vicente apparently asked Milan Davila for the political affiliation of each of the members of the Internal Security office. Milan Davila told Vicente the political affiliation of each member of the office while Vicente and another employee took notes.

(3) On September 27, 1985, Vicente informed plaintiff that Internal Security would cease to perform certain investigations that it had conducted in the past.

(4) On December 17, 1985, plaintiff was notified that he will not be required to attend the meetings of the committee for the Program of Managerial Loss Control.

(5) Although this allegation in the complaint is unclear, it appears that upon entering the lobby of PREPA's central building, all packages were searched by PREPA's security. On December 20, 1985, co-defendant Alvarado circulated a memorandum in the agency addressed to plaintiff, which characterized the inspection of packages in the lobby of PREPA's central building as "an offense to the work style of the administration." (Complaint ¶ 11I).

(6) By memorandum dated January 28, 1986, plaintiff indicated to co-defendant Alvarado that the previous Executive Director had indicated to him in writing that plaintiff's salary would be increased. This allegation is similarly unclear but it seems that plaintiff's request for an increase in salary was granted, but the classification of his job remained the same.

(7) Around April 1986, plaintiff is informed that the only functions of Internal Security would be related to the security of PREPA's electrical installations.

(8) Throughout 1985, 1986 and 1987, plaintiff served as a witness in a number of civil rights actions filed by PREPA employees against PREPA alleging political discrimination. Plaintiff alleges that as a result of testifying in these actions he was subjected by the PREPA administration to harassment and persecution. On April 1987, plaintiff reported to the State Insurance Fund, allegedly suffering an emotional condition. The State Insurance Fund attributed plaintiff's condition to work pressure. Plaintiff did not return to work for approximately five months.

(9) On October 1, 1987, plaintiff reported to work. About two months later the PREPA administration required plaintiff to take a vacation leave until February 8, 1988.

(10) On July 1, 1988, the Director of Administrative Services notified plaintiff that starting July 23, 1988, plaintiff would be

---

**5.** Under PREPA regulations, "trust or confidence employees" are those "classified in the occupational groups M–VI to M–VIII, Executive Officers and Officers of the Authority ..." Electric Power Authority, Personnel Division, Personnel Regulation, II (Feb. 24, 1982) cited in *Figueroa–Rodriguez v. Lopez–Rivera*, 878 F.2d 1478, 1486 (1st Cir.1989).

reassigned from Administrator of the Office of Internal Security to Advisor in the division of Internal Security. Plaintiff claims that his reassignment was actually a demotion. On August 20, 1988, codefendant Pedro J. Ruiz de Jesus was appointed to Director of the Division of Internal Security and named plaintiff's supervisor.

(11) Plaintiff alleges that in his new position he has not been assigned any advisory work or tasks. In the complaint plaintiff alleges that at work he was "marginalized (sic) and ostracized." [6] He claims he is constantly harassed and his work is either rejected or criticized by his supervisors. He asserts that his change of classification from Administrator to Advisor violates PREPA's personnel rules.

(12) On January 20, 1989, the Director of Human Resources sent a memorandum to the Director of Administrative Services alleging that plaintiff had undertaken certain unauthorized actions, and requesting that plaintiff be instructed as to the problems he had created in PREPA.

(13) On April 5, 1989, plaintiff solicited in writing from codefendant Alvarado an explanation as to why he had been "demoted" from Director to Advisor. Plaintiff alleges he never received a response to his letter.

## IV. FIRST AMENDMENT CLAIM

■ The First Amendment protects a public employee from discharge on the grounds of his or her political belief or association. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In *Rutan v. Republican Party of Illinois*, —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court extended the rule of *Elrod* and *Branti* to promotion, transfer, recall and hiring decisions based on party affiliation. However, if a public employee's political beliefs interfere with the dis-

charge of his or her duties, the employee's "First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294 (citing *Elrod*, 427 U.S. at 366, 96 S.Ct. at 2686). Plaintiff alleges that his reassignment constituted a demotion in violation of his constitutional rights to freedom of belief and association.

■ Plaintiff avers that the reorganization was merely a pretext to demote him from the position of Administrator to Advisor. Plaintiff, however, does not identify which of the two reorganizations that took place, (1) the transfer of the Internal Security office from the Executive Directorate to the Directorate of Administrative Services or (2) the reclassification of the office of Internal Security into a division, was undertaken to violate his First Amendment rights. We assume plaintiff refers to the reorganization eliminating the position of Administrator because any claims arising from the first reorganization may be time barred under Puerto Rico's one-year statute of limitations. 31 L.P.R.A. § 5298(2); *Rodriguez Narvaez v. Nazario*, 895 F.2d 38 (1st Cir.1990). With respect to this reorganization, plaintiff has failed to present any evidence to create an inference that the reorganization by itself was a pretext to retaliate against his political beliefs. *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available").

In fact, the evidence shows that plaintiff's reassignment to the position of Advisor to the Director of the Division of Internal Security in July 1988 did not entail a salary or classification change and that plaintiff was reassigned in accordance with

---

**6.** In his deposition, plaintiff alleges that during Ruiz de Jesus' tenure as Director of Internal Security he did nothing at work. However, plaintiff allegation remain unsupported; he has not "reliably demonstrate[d] specific facts sufficient to create an authentic dispute exist." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st

Cir.1990); *Zayas Rodriguez v. Hernandez*, 748 F.Supp. 47, 50–51 (D.P.R.1990). In fact, plaintiff makes several allegations in the complaint that tend to contradict the above allegation. For example, he alleges that the work he performed as Advisor was criticized and/or rejected. (Complaint ¶ 11(R)).

PREPA personnel regulations because he occupied a position classified as a "trust" position by such regulations.

## A. WHETHER PARTY AFFILIATION IS AN APPROPRIATE REQUIREMENT FOR THE POSITION OF DIRECTOR OF INTERNAL SECURITY

■ It is settled that an incoming administration can dismiss or reassign government employees for politically motivated reasons when such employees hold policy-making positions or are situated in a confidential relationship with the policymaking process. *Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). Recently, the Supreme Court reaffirmed this principle, by stating that "a government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high level employees on the basis of their political views." *Rutan*, 110 S.Ct. at 2737.

Defendants contend that political party affiliation is an appropriate consideration for the effective performance of the position of Director of Internal Security of PREPA and therefore, plaintiffs reassignment to the position of Advisor was the result of a reorganization of the Office of Internal Security.

■ In *Jimenez–Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir. 1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), the First Circuit set forth a two-part test to determine whether party affiliation is a permissible requirement for the position of Administrator of Internal Security. First, we determine whether the position involves

"governmental decisionmaking on issues where there is room for political disagreement on goals or their implementation[ ]." *Jimenez–Fuentes*, 807 F.2d at 241–42. Second, we examine the particular responsibilities of the position to determine whether its inherent powers and privileges demonstrate that party affiliation is an appropriate requirement. 807 F.2d at 242.

The Puerto Rico Power Authority is a public service company responsible for the development and utilization of water and energy resources in the island. 22 L.P.R.A. § 196. As a basic service provider, it may handle "matters potentially subject to partisan political differences." *Fontane–Rexach v. Puerto Rico Elec. Power Authority*, 878 F.2d 1493, 1495 (1st Cir.1988) (citing *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1258 (1st Cir. 1987)), *aff'd on rehearing en banc*, 878 F.2d 1478; *Rodriguez–Burgos v. Electric Energy Authority*, 853 F.2d 31, 35 (1st Cir.1988).

■ At the outset, we note that the Administrator of Internal Security is classified as a position of confidence under PREPA regulations. What effect such a classification has on the analytic resolution of the issue in question is subject to debate; however, we believe, that a position classified by personnel regulations as trust or confidence creates a presumption that plaintiff's reassignment was proper. *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990); *Lohorn v. Michal*, 913 F.2d 327 (7th Cir.1990); *Figueroa–Rodriguez v. Lopez–Rivera*, 878 F.2d 1478, 1481 (1st Cir.1989). The job description for the position of Director of Internal Security states that the general duties are to manage and direct the internal protection system of the different branches or installations of PREPA in Puerto Rico. The following functions are specified:[7]

7. Compare the duties specified for plaintiff's former position, the Administrator of Internal Security:

a. Formulating and/or participating in the formulation of the norms and rules concerning the internal security of PREPA.

b. Preparing and conducting orientation programs regarding Internal Security and Protection.

c. Directing, in coordination with other offices, the investigation of irregularities, as well as violations to the norms and internal security practices.

d. Directing investigations of a confidential character as required.

In addition, the description states that one of the significant characteristic of the position is that it is carried out with little supervision and

a. Designing, planning and directing the internal security system of PREPA.

b. Formulating the norms and rules concerning the internal security of PREPA.

c. Preparing and conducting orientation programs regarding Internal Security and Protection.

d. Directing, in coordination with other offices, the investigation of irregularities.

e. Recommending to the Executive Director the contracting of specialized security services when the situation requires it.

f. Directing investigations of a confidential character when required.

g. Acting as liaison with the agencies which regulate law and order.

■ The description of the position sufficiently demonstrates that the Director makes decisions that potentially concern matters of partisan political interest. *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255 (1st Cir.1987). The position is at the third level in PREPA's hierarchy; above the Director are only two positions— the Director of Administrative Services and the Executive Director. The record shows that there are politically differing goals or methods of providing security to the PREPA facilities to ensure adequate electrical service to Puerto Rico. This determination, however, is a close one because in the spectrum between decisions that have the potential to be politically controversial and those that are technical in nature, the majority of decisions about the security of PREPA are closer to the technical side. Nevertheless, sufficient discretion is vested on the Director to make rules and regulations, thus resembling a policymaker and as the head of PREPA's internal security, he is privy to confidential information regarding PREPA matters. *Figueroa–Rodriguez v. Lopez–Rivera*, 878 F.2d 1478,

1481 (1st Cir.1989) ("many areas of government that sound technical ... may, depending on time and circumstance, become 'politically charged.'").

We do not rely solely on the description of the position to conclude that it provided policymaking discretion and access to confidential information. *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294 (test is not whether label policymaker or confidential fits a particular position). The controversy over the placing of cameras in the PREPA building and over the use of cameras to film the union's strikes sufficiently demonstrates how the position of Administrator/Director has the potential to be politically controversial by having a direct effect on the relationship between management and the union.[8] Such relationship, in turn, affects the public's view of PREPA. The union opposed the cameras because it apparently viewed the cameras as an instrument of repression.[9]

On the second prong, examining the inherent powers and privileges of the office, we rely for guidance on the factors cited in *Jimenez–Fuentes* to determine whether the position of Administrator performs such functions that party affiliation is an appropriate requirement. These factors are:

"relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials and responsiveness to partisan politics and political leaders [and responsibilities that are not well defined or are of broad scope]."

807 F.2d at 242 (citing *Ecker v. Cohalan*, 542 F.Supp. 896, 901 (E.D.N.Y.1982) and *Elrod*, 427 U.S. at 368, 96 S.Ct. at 2687).

As an executive officer, the Director is better paid than most PREPA employees, a fact which tends to show that he occupied a

---

requires a high degree of discretion and independent judgment.

**8.** Codefendant Alvarado stated in his deposition that the reason why plaintiff was not selected to the position of Director related to Alvarado's view that plaintiff was perceived by PREPA's union as an obstacle in negotiations with management because of plaintiff's abrasive way

of dealing with the union. In his deposition, codefendant Alvarado claimed he wanted to improve the communication among PREPA employees and to establish a more open working environment.

**9.** By order of co-defendant Alvarado, the cameras were finally removed.

position of influence. The position of Director/Administrator does not require a high degree of technical competence. Plaintiff, however, controlled and supervised a staff of security employees.[10] As the top man of PREPA's security, plaintiff exercised considerable influence through the selection of security procedures and rules and there is evidence that he had the potential to make decisions that could affect the relationship between management and the union. The controversy over the use of cameras demonstrates how some decisions made by the Director of Internal Security are matters potentially subject to partisan political differences and as the press reports indicate, these matters have the potential of causing a great deal of public concern. Although plaintiff's position did not place him in contact with high ranking political leaders, he had access to other elected officials such as union leaders. Finally, we note that certain of plaintiff's responsibilities are not well defined, thus he enjoyed discretion on issues in which there is room for disagreement based on political party affiliation.[11] For example, suppose that the Administrator/Director orders an confidential investigation of a union leader, who has been linked to sabotage activities against PREPA's equipment. If the investigation is leaked and it becomes public, the potential for political embarrassment and backlash is great.

Plaintiff asserts that political affiliation can not be an appropriate requirement for the effective performance of the office of Administrator of Internal Security because he served in that capacity for about three and a half years under the PPD administration. At first blush, plaintiff's argument seems to have some force. However, the position of Administrator was eliminated and the Office of Internal Security was restructured into a Division and a higher ranking and better paid position was created. Even assuming that the restructur-

ing consisted of insignificant changes and that the differences between the position of Administrator and Director are cosmetic, we think the proper inquiry is not whether a person identified and affiliated with the PNP may serve as an Administrator, but whether PREPA can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office of Administrator. We think PREPA has carried its burden here. The *Agosto-De-Feliciano* court recognized this point in discussing the "changeover defense." It stated:

> [A]n administration ought not to be deprived of a "reorganization" defense simply because it took place at a relatively late point in its term of office. Some reforms and reorganizations may be much more complex than others and require much more investigation, analysis and preparatory drafting. *And some ideas for restructuring may simply have surfaced later in good faith.*

889 F.2d at 1221 (emphasis added).

■ In short, the internal security of PREPA implicates partisan issues. We conclude that PREPA's interest to have an efficiently run Internal Security office free from dissention and distrust outweighs plaintiff's First Amendment rights. *Armstrong v. City of Arnett,* 708 F.Supp. 320, 325–26 (W.D.Okl.1989).

### B. HAS PLAINTIFF'S REASSIGNMENT PLACED SUBSTANTIAL PRESSURE ON THE EXERCISE OF HIS FIRST AMENDMENT RIGHTS

Even assuming that party affiliation was not a requirement for the position of Director of Internal Security, we find that under the standards set forth in *Agosto-De-Feliciano v. Aponte-Roque,* 889 F.2d 1209 (1st Cir.1989), that defendants are not liable for reassigning plaintiff. In *Agosto-*

---

**10.** Plaintiff alleges he supervised seventeen security employees. (Plaintiff's Opposition to Motion for Summary Judgment at 9).

**11.** In his deposition, plaintiff provided the following description of his general functions: "[I]

direct everything in relation to security.... That concerned everything and the ... protection of life and property of all of the Authority's personnel ..." (Deposition of R.A. Pietri at 84).

*De–Feliciano,* the First Circuit examined the issue of when does adverse governmental action short of dismissal against a public employee because of his political affiliation constitute a violation of the employee's First Amendment rights. The First Circuit interpreted *Elrod* and *Branti* to imply that the First Amendment protects public employees from some adverse actions by the government short of dismissals. The First Circuit found that the difficulty in formulating a standard to determine when the government's politically motivated actions against a public employee short of dismissal reach the level of a constitutional violation lies in the fact that in these constructive dismissals cases, "there are First Amendment interests on both sides." 889 F.2d at 1215. On one side, the incoming administration has an interest in the effective implementation of policies, presumably favored by the electorate, which may require changes that adversely affect government employees. *Id.* citing *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686. On the other side, the employee has a right to practice his First Amendments rights free of harassment.

The First Circuit rejected the adoption of a diffuse standard which would allow any employer action that affected an employee to be challenged in the courtroom. It also found that the Seventh Circuit "constructive dismissal" standard established in *Rutan v. Republican Party of Illinois,* 868 F.2d 943 (1989), *rev'd,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), had the potential of allowing the government to impose a constitutionally impermissible burden on the employee's First Amendment rights. 889 F.2d at 1218. Consequently, the First Circuit held that a public employee's first amendment right were substantially burdened "when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." 889 F.2d at 1218. The employee has the burden of showing that the transfer, reassignment or demotion to a new position is unreasonably inferior to his previous position by clear and convincing evidence.

We proceed to delineate the consequences of the reassignment on plaintiff's exercise of his First Amendment, noting that we are hampered in this effort by plaintiff's failure to brief us on this point.

Defendants assert that plaintiff's reassignment was not a demotion. They contend that co-defendant Alvarado ordered an indepth evaluation of the PREPA organization and said evaluation revealed the need for a structural and administrative reorganization in PREPA. A plan for reorganization was approved. Pursuant to the reorganization, the Office of Internal Security which had been under the Executive Directors' office in PREPA's organizational structure was transferred to the Directorate of Administrative Services. In June 1988, a reorganization of the Office of Internal Security was approved, following a recommendation submitted by the Director of Administrative Services. Under the reorganization, the Office of Internal Security was restructured and classified as a division. Additional functions were added to the division and new positions created, including the Director of the Division of Internal Security, a position classified under PREPA personnel regulations as Executive III. Defendants assert that the elevation of the office of Internal Security to the rank of Division indicates its importance within PREPA's new structure and the need for a Director with a higher classification and salary. After carefully evaluating the evidence, we find that the reassignment entailed a change of title, duties and responsibilities while maintaining the same classification and salary level. Instead of supervising the employees of the office of Internal Security, plaintiff assumed the role of Advisor to the Director of Internal Security. The description of the duties and responsibilities of the work clearly establishes that plaintiff no longer has the discretion and responsibility that he had as Administrator. Plaintiff, however, has not alleged sufficient specific facts to meet the severity level of *Agosto–De–Feliciano.* As the First Circuit noted: "An employee who had been a supervisor and had worked independently in designing the projects necessary to carry out her duties

and who lost only the freedom to work independently—instead being required to report regularly on her work—would not meet the standard." Assuming that plaintiff lost his independence, which we can not say since plaintiff has introduced no facts and under *Agosto–De–Feliciano* plaintiff has to establish the severe change in work conditions by clear and convincing evidence, we find that plaintiff has been assigned duties that are "challenging and significant." 889 F.2d at 1219.

■ Whatever adverse consequences plaintiff has suffered from his alleged demotion, PREPA' actions are not a constitutionally significant burden on plaintiff's First Amendment's rights. As the First Circuit has stated:

> [W]e believe that even some politically motivated interactions between highlevel policymakers and protected civil service employees should not trigger a constitutional cause of action. These less serious occurrences—social preferences or pressure, nuances affecting status and prestige, and articulated or indirectly manifested slurs and gibes—may be an all too real by-product of our long-standing organization of political life into two or more parties. [citation omitted]. We believe it appropriate to require the citizen who believes and affiliates with a political party to develop a suitably thick

skin to withstand the rigors of our societal, often highly politicized, life. 889 F.2d at 1217.[12]

## V. DUE PROCESS CLAIM

■ The due process clause provides that a person cannot be deprived of life, liberty or property without constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). A public employee may have a property interest in continued public employment if such interest is created by "existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ.*, 470 U.S. at 538, 105 S.Ct. at 1491 (citation omitted).

Consistent with the merit principle, under PREPA's personnel regulations employees are classified as either career employees or confidence employee. 3 L.P.R.A. § 1349; *Reyes Coreano v. Loubriel*, 110 D.P.R. 40 (1980). Career employees have a property right in their continued employment and may be fired only for good cause. 3 L.P.R.A. § 1336; *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169 (1st Cir.1988); *Zayas Rodriguez v. Hernandez*, 748 F.Supp. 47 (D.P.R.1990).

Under the provisions of the Public Service Personnel Act, government agencies that operate as a private enterprise, such

---

**12.** Assuming that plaintiff has carried his burden of showing that the burden on his First Amendment rights is sufficiently severe to meet the *Agosto–De–Feliciano* standard, plaintiff must still "persuade the factfinder by a preponderance of the evidence that the diminution in duties was motivated by discrimination on the basis of political affiliation." If the plaintiff is able to clear this additional procedural hurdle, then the burden shifts to the employer to show by a preponderance of the evidence that the diminution in duties "would have been made *regardless* of political affiliation." 889 F.2d at 1220 (emphasis in original).

Defendants argue that assuming plaintiff has established by a preponderance of the evidence that he was discriminated on the basis of his political beliefs, they are entitled to the "changeover" defense established in *Agosto–De–Feliciano.* The changeover defense recognizes the First Amendment interest of an incoming administration in restructuring and reorganizing to achieve maximum efficiency in the implementation of its policies. The defense has two

prongs; first, some deference is given to the new administration's reorganizations or procedural reforms. This deference represents an inference that the new administration might restructure certain employee's jobs because "*as a matter of policy,* [it] does not view those jobs to be important." 889 F.2d at 1221. The new administration has the burden on this issue.

On the second prong, some deference is given to the new administration's assignment of the duties formerly carried out by the plaintiff to an employee who shares the "political philosophy" of the new administration. The assumption on that prong is that the affected employee's First Amendment interest is not a severely burdened when some of his job duties, considered by the new administration as particularly important to implement its policies, are assigned to another employee. The new administration also has the burden of proof on this issue and plaintiff is given the opportunity to refute the explanations.

In the instant action, PREPA has established *several* substantive reasons for its decision to reassign plaintiff and these reasons are supported by the record. 889 F.2d at 1222.

as PREPA, are required to adopt personnel regulations embodying the merit principle. 3 L.P.R.A. § 1338. PREPA has enacted such regulations and plaintiff's status as a career employee gives him an expectation to continued employment.

 The problem for plaintiff is that he has not lost his property interest because he has not been fired. Plaintiff has failed to direct us to any substantive rule that gives him a cognizable interest in continued employment as an Administrator rather than as an Advisor. Nor can we say that plaintiff will be successful in such a speculative endeavor, since the deprivation plaintiff alleges he suffered may not constitute a property interest. 3 L.P.R.A. § 1349; *Ruiz–Roche v. Lausell*, 848 F.2d 5 (1st Cir.1988); *Lopez Carrillo v. Soto Ayala*, 737 F.Supp. 150, 152 (D.P.R.1990). Plaintiff was merely transferred to a job at the same salary and classification. Since plaintiff had no property interest in retaining the position of Administrator of Internal Security, his transfer did not violate the due process clause.

## VI. CONCLUSION

In short, we find that plaintiff's position fall outside of the scope of protection established in *Elrod* and *Branti*. Alternatively, we hold that plaintiff failed to carry his burden under *Agosto–De–Feliciano*. Defendants' motion for summary judgment is hereby GRANTED.

SO ORDERED.